UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHITRA KARUNAKARAN,

                     Plaintiff,

              – v. –

BOROUGH OF MANHATTAN COMMUNITY
COLLEGE, CITY UNIVERSITY OF NEW
YORK, ANTONIO PEREZ, KARIN WILKS,
SANGEETA BISHOP, RIFAT SALAM,
ANTIONETTE MCKAIN, ROBERT DIAZ,
IAN WENTWORTH, MICHAEL
HUTMAKER, and MARVA CRAIG,

                     Defendants.

**<u>OPINION AND ORDER</u>**

18 Civ. 10723 (ER)

Ramos, D.J.:

       Chitra Karunakaran, a former employee of the City University of New York ("CUNY")
who was a Professor at the Borough of Manhattan Community College ("BMCC"), brings this
action against CUNY, BMCC, and several current and former employees of BMCC[1]
(collectively, the "Defendants"), for violation of Title VII of the Civil Rights Act of 1964 ("Title
VII"), the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit
Protection Act ("OWBPA"), the New York State Human Rights Law ("SHRL"), and the New
York City Human Rights Law ("CHRL").  Am. Compl., Doc. 7.  In particular, Karunakaran
alleges that Defendants maintained a hostile work environment, engaged in employment
discrimination on the basis of her race, national origin, and age, and retaliated against her.  Now

---

[1] Antonio Perez, Karin Wilks, Sangeeta Bishop, Rifat Salam, Antionette McKain (who Defendants clarify is actually named Antonette McKain), Robert Diaz, Ian Wentworth, Michael Hutmaker, and Marva Craig (the "Individual Defendants").

pending before this Court is the Defendants' motion to dismiss this action.  Doc. 45.  For the

reasons set forth below, the motion is GRANTED.

## I.      BACKGROUND

Karunakaran was employed by CUNY at BMCC for approximately 20 years as a

Professor of psychology and sociology.  Doc. 7 ¶ 31.  For the last three years of her tenure,

Karunakaran was involved in a union, actively opposing control of online teacher-student

activities by someone other than the course's teacher.  *Id*. ¶¶ 49, 51.  Following these activities,

McKain began restricting Karunakaran's use of an online teaching tool and isolating her from

other teachers.  *Id*. ¶ 51.  When Karunakaran complained, McKain did not respond.  *Id*. ¶ 52.

Karunakaran also alleges that Bishop targeted her for termination following her involvement in

these union activities and that, upon information and belief, Bishop did not target younger, non-

Indian professors who also engaged in union activities.  *Id*. ¶¶ 49–50.

On or about February 2018, a student (the "Student") in Karunakaran's class became

verbally and physically aggressive towards her and disrupted class.  *Id*. ¶ 34.  On one occasion,

the Student told her, "You suck. You don't know anything."  *Id*. ¶ 36.  Karunakaran alleges that

the Student's behavior was racially motivated because, when she had previously taught the

Student in an online class, the Student had not been disruptive.  *Id*. ¶ 35.

Karunakaran made numerous complaints to administration officials[2] about the Student's

behavior and requested that the Student be offered psychological help.  *Id*. ¶ 37.  The Individual

Defendants took no action.  *Id*. ¶ 38.

---

[2] Karunakaran states that she made complaints to the Individual Defendants, but only specifically states that
Hutmaker, Craig, and Wentworth failed to address the Student's behavior.  *Id*. ¶ 41.  While Karunakaran also states
that she made complaints to McKain, described *supra*, and to Bishop, described *infra*, she does not assign any
specific actions to Wilks, Salam, and Diaz beyond stating, upon information and belief, that each of those three
defendants was a decision-maker as to matters of faculty hiring, retention, and termination.  *Id*. ¶¶ 13, 19, 23.

On March 18, 2018, Karunakaran filed a formal complaint, which she titled "A Hostile Work Environment," with Perez (the "March Complaint").[3] *Id*. ¶¶ 44–45, 47.  In her March Complaint, Karunakaran alleged that BMCC maintained a "covert, ad hoc/post hoc mode of organizational dysfunction resulting in a generally unchallenged racialized, ageist hostile work environment for contingent academic labor."[4]  Doc. 2 at 19.  In the March Complaint, Karunakaran alleged that BMCC discriminates and creates a hostile work environment based on contingent labor.  *Id.*  The March Complaint also alleged that her Department Chair threatened not to reappoint Karunakaran.  *Id*. at 20.  Karunakaran alleges that Perez did not adequately investigate the March Complaint.  Doc. 7 ¶ 46.

On March 27, 2018, the Student tried to grab papers and other materials from Karunakaran and became increasingly aggressive during class.  *Id*. ¶ 39.  She complained about the Student's behavior to the Individual Defendants but, again, no action was taken to address the Student's behavior.  *Id*. ¶ 40.

On May 11, 2018, Karunakaran was denied re-appointment by the Defendants for the Fall 2018 semester.  *Id*. ¶¶ 48, 53.

On August 13, 2018, Karunakaran filed a charge of discrimination with the New York State Division of Human Rights.  *Id*. ¶ 3.  The charge was subsequently sent to the Equal

---

[3]  Karunakaran attached (1) the March Complaint, (2) the EEOC Charge of Discrimination she filed on August 13, 2018, and (3) the EEOC Right to Sue letter issued on August 21, 2018 to her initial complaint.  Compl., Doc. 2 at 14–20.  On a Rule 12(b)(6) motion, in addition to the complaint, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2020).  As Karunakaran herself attached these documents to her initial complaint, and they form the basis of her amended complaint, this Court will consider these documents in its analysis.

[4]  Karunakaran appears to be a non-tenure track faculty member subject to periodic reappointment, and she titles herself as "contingent faculty" in the March Complaint.  Doc. 2 at 19.

Employment Opportunity Commission ("EEOC"), and on August 21, 2018, the EEOC issued a Right to Sue letter.  *Id.* ¶ 4.

On November 15, 2018, Karunakaran filed her initial *pro se* complaint against Defendants for employment discrimination on the basis of race, national origin, and age under Title VII, the ADEA, SHRL, and CHRL, as well as retaliation for filing the March Complaint and for being an active union member.  Doc. 2.  On September 6, 2019, Karunakaran, now counseled, filed an amended complaint alleging a hostile work environment, workplace discrimination on the basis of her race, national origin, and age, and retaliation.  Doc. 7.  In particular, she alleges that Perez, Hutmaker, Craig, and Wentworth discriminated against her by failing to address her complaints regarding the Student.  *Id.* ¶¶ 41, 43, 45–46.  Karunakaran further alleges that younger, non-Indian professors' complaints were answered in a timely manner and requests for help with disgruntled students were met with immediate remedial efforts.  *Id.* ¶ 43.  Karunakaran also states that Bishop targeted her for participation in union activities while not targeting younger, non-Indian professors who had also engaged in union activities.  *Id.* ¶¶ 49–50.  She has suffered severe emotional distress as evidenced by her taking a two-day leave of absence after having not taken any leave during twenty years of continuous teaching at BMCC.  *Id.* ¶ 42.  She also suffered loss of income when she was not re-appointed. *Id.* ¶ 53.

On May 7, 2020, Defendants moved to dismiss the amended complaint.  Doc. 45.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this

requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

**B.    Leave to Amend under Rule 15**

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Fed. R. Civ. P. 15. Under Section 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Amendment is ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "'good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

An amendment to a pleading is futile, however, if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70–71

(2d Cir. 1999) (quotation marks and citation omitted).  In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis."  *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006).  Following this standard, the court accepts the Plaintiff's factual allegations as true and draws reasonable inferences in favor of the Plaintiff.  *Id.*

## III.   DISCUSSION

### A.   OWBPA Claims

Karunakaran alleges that, in violation of the OWBPA, the Defendants discriminated against her based on her age and retaliated against her for her participation in protected activity. In 1990, Congress amended the ADEA by enacting the OWBPA, which was "designed to protect the rights and benefits of older workers."  *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–27 (1998).  Since then, several courts in this district have ruled that the OWBPA does not create a private cause of action for either age discrimination or retaliation claims.  *See Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18 Civ. 1847 (NSR), 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019) (determining the plaintiff's OWBPA retaliation claim failed because "the OWBPA does not create a private cause of action"); *Jiggetts v. United Parcel Serv.*, No. 14 Civ. 8291 (AJN), 2017 WL 1164698, at *5 (S.D.N.Y. Mar. 27, 2017) ("[T]he OWBPA  does not give rise to a cause of action separate from a violation of the ADEA"); *Grays v. SDH Educ. W., LCC*, No. 16 Civ. 666 (DAB), 2017 WL 2240227, at *5 (S.D.N.Y. Mar. 23, 2017) ("OWBPA does not establish a cause of action for age discrimination").

In opposition, Karunakaran cites *Commonwealth of Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90 (D. Mass. 1998), for the proposition that the OWBPA does support an independent cause of action.  Pl.'s Opp., Doc. 51.  However, *Commonwealth* is easily distinguishable from the present case.  In that case, the District of Massachusetts found that the

OWBPA provided an independent cause of action for violation of a waiver provision introduced to the ADEA by the OWBPA itself and that raising the same claim under the ADEA would lead to "immediate and draconian penalties."  16 F. Supp. 2d at 105-06.  No such waiver is in question in this case, and remedies under the ADEA are available for Karunakaran to pursue. *Commonwealth* is therefore unpersuasive.

Karunakaran also cites *E.E.O.C. v. UBS Brinson, Inc.*, Nos. 02 Civ. 3748 (RMB)(TK), 02 Civ. 3745 (RMB)(TK), 2003 WL 133235 (S.D.N.Y. Jan. 15, 2003).  Doc. 51 at 19.  However, the court in *UBS Brinson* determined that the OWBPA *did not* create an independent cause of action, expressly declining to follow *Commonwealth*.  *UBS Brinson*, 2003 WL 133235, at *3–5.  The *UBS Brinson* court explained that "the OWBPA waiver requirements were intended to be 'a shield for plaintiffs in an ADEA action when an employer invokes the waiver as an affirmative defense,' not a sword that provides an independent (age discrimination) claim."  *Id.*, at *5 (quoting *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999)).

Because the OWBPA does not provide a private cause of action for Karunakaran's age discrimination and retaliation claims, Karunakaran's OWBPA claims are dismissed.

**B.      Title VII and ADEA Claims**

*1.  Discrimination Claims*

Karunakaran alleges that she was denied reappointment on the basis of her race, national origin, and age.  Doc. 7 ¶¶ 56, 61.  She also alleges that she was treated less favorably than similarly situated employees.  *Id.*

Employment discrimination claims under Title VII or the ADEA are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination.

*McDonnell Douglas*, 411 U.S. at 802.  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions.  *Id*. at 802–03.  If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.  *Id*. at 804.  Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation.  *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."  *Id*. at 311.  Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a *prima facie* case.

To establish a *prima facie* case of discrimination under either Title VII or the ADEA, the plaintiff must show that:  (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003).

In the absence of an express discriminatory statement, a plaintiff may support an inference of discrimination by demonstrating that similarly situated employees outside of the plaintiff's protected class were treated more favorably.  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).  Importantly, "[t]o support such an inference, a complaint 'must compare' the plaintiff to employees who are 'similarly situated in all material respects.'"  *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Norville*, 196 F.3d at 95).  What satisfies this requirement "will vary from case to case," and while the plaintiff's and the comparator's circumstances need not be identical, they "must bear a reasonably close resemblance."  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).

In the instant motion, without more information, Karunakaran fails to plead factual allegations that support a minimal inference of discriminatory motivation.  Beyond conclusory statements that she was denied reappointment as a result of discrimination and retaliation, Doc. 7 ¶ 33, Karunakaran does not provide sufficient factual allegations that the denial of her reappointment was connected to discrimination against her on the basis of race, national origin, or age.  *See Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 32–33 (2d Cir. 2016) (finding that "[a] plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible'" and an amended complaint "nearly bereft of any specific facts to support" conclusions of discrimination did not plausibly support a minimal inference of discriminatory motivation); *Gilford v. NYS Off. of Mental Health*, No. 17 Civ. 8033 (JPO), 2019 WL 1113306, at *6 (S.D.N.Y. Mar. 11, 2019) ("No matter what the pleading standard is, [a] complaint must at least contain enough factual allegations that are *not* made upon information and belief to 'raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).  Karunakaran attributes discriminatory animus to the Defendants almost exclusively through the use of statements made upon information and belief, Doc. 7 ¶¶ 35, 43, 50, without additional factual allegations to support those statements.

Further, Karunakaran does not provide any information about any similarly situated employee comparators beyond saying that, upon information and belief, other professors who were not members of her protected classes had their complaints remedied in a timely manner, *id*. ¶ 43, which does not allow this Court to draw an inference that there was favorable treatment of other employees outside of her protected status.  Simply arguing that employees not in her protected groups were treated differently is not sufficient without pleading additional details

about specific events and without pleading additional facts that Karunakaran was similarly situated in all material respects to those comparator employees. *See Feliz v. Metro. Transp. Auth.*, No. 16 Civ. 9555 (ER), 2017 WL 5593517, at \*5–7 (S.D.N.Y. Nov. 17, 2017) (dismissing plaintiff's Title VII claims for failing to allege facts that comparator employees outside his protected class were similarly situated in all material respects, such as qualifications and seniority); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) (dismissing plaintiff's Title VII claims for failure to plead specific events or more details to support her disparate treatment claims beyond broadly asserting that there were comparator employees outside her protected class who were treated better than her).

Therefore, Karunakaran's federal race, national origin, and age discrimination claims must be dismissed.

### 2. *Retaliation Claims*

Karunakaran alleges that she was denied reappointment in retaliation for filing the March Complaint and for participating in union activities. Doc. 7 ¶¶ 44, 48, 49. She also states that she was retaliated against for her informal complaints to the Defendants. Doc. 51 at 16.

Title VII and the ADEA contain nearly identical provisions forbidding retaliation for complaining of employment discrimination prohibited by Title VII and the ADEA. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Retaliation claims under Title VII and the ADEA are therefore analyzed under the same framework. *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017); *see also Terry*, 336 F.3d at 141 (applying the same standards and burdens to claims of retaliation brought under both Title VII and the ADEA). A retaliation claim has four elements: "(1) the employee engaged in [a] protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal

connection between the protected activity and the adverse employment action." *Dickens*, 167 F. Supp. 3d at 522.

To constitute participation in a protected activity, the Second Circuit has held that an employee's complaint may qualify "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. And not just any law— the plaintiff is required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also McManamon v. Shinseki*, No. 11 Civ. 7610 (PAE), 2013 WL 3466863, at *7 (S.D.N.Y. July 10, 2013) ("Because [Plaintiff] did not oppos[e] a practice made unlawful by . . . the ADEA, he did not engage in protected activity under that statute." (quotation marks and citation omitted)).

In the instant case, Karunakaran cites her March Complaint and several informal complaints as the reason for Defendants' retaliation. However, the March Complaint, despite referencing an "ageist hostile work environment," solely focuses on discrimination against contingent labor, and not against her on the basis of her membership in a protected class. Doc. 2 at 19–20. Moreover, in her amended complaint, Karunakaran only describes her informal complaints as being about the Student's behavior. Doc. 7. Nothing about these informal complaints or the March Complaint "yields any basis for concluding that the plaintiff had an objectively reasonable belief that the conduct she was complaining about had anything to do with her membership in a protected class." *Lawtone-Bowles v. City of N.Y., Dep't of Sanitation*, 22 F. Supp. 3d 341, 351 (S.D.N.Y. 2014). The *Lawtone-Bowles* court determined that an EEO complaint about an employee verbally abusing the plaintiff and a verbal complaint made to an

employee's supervisor about that employee's rude and obnoxious behavior towards the plaintiff

did not provide the basis for a retaliation claim under Title VII or the ADEA. *Id.* ("Where, as

here, the plaintiff [m]ere[ly] complain[s] of unfair treatment by an individual, there is no basis

for a finding of unlawful retaliation." (internal quotation marks and citation omitted)) *See also*

*McManamon*, 2013 WL 3466863 (dismissing retaliation claims that did not involve opposition to

a practice made unlawful by Title VII or the ADEA); *Santucci v. Veneman*, No. 01 Civ. 6644

(CBM), 2002 WL 31255115, at *4 (S.D.N.Y. Oct. 8, 2002) (dismissing retaliation claims for

failing to involve a complaint about a type of discrimination that Title VII forbids). Similarly,

any claim Karunakaran makes regarding retaliation based on union activities fails to specify that

"those activities consisted of opposition to statutorily prohibited discrimination." *Smith v.*

*Johnson*, 636 F. App'x 34, 37 (2d Cir. 2016).

   Karunakaran argues that the Defendants committed adverse employment actions when

they denied Karunakaran reappointment, permitted the Student's harassment of Karunakaran,

threatened Karunakaran with non-reappointment, and restricted Karunakaran's use of an online

teaching tool. Doc. 7 at 7. The Defendants do not dispute that denying Karunakaran

reappointment is an adverse employment action. In connection with the other activities,

Karunakaran does not provide any support for her argument that they qualify as adverse

employment actions.[5] In direct contrast, regarding threatening not to reappoint Karunakaran,

"[c]ourts in this district have found that reprimands, threats of disciplinary action and excessive

---

[5] Karunakaran's citations in opposition are inapposite. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (determining that an employer could be liable for a supervisor's sexual harassment of an employee where the employer is not negligent or otherwise at fault for that supervisor's behavior, but not addressing whether an employer can be held liable for a student's harassment of an employee); *Valdes v. N.Y.C. Dep't of Env't Prot.*, No. 95 Civ. 10407 (JSR), 1997 WL 666279 (S.D.N.Y. Oct. 27, 1997) (holding that the plaintiff's supervisors' suggestion that the plaintiff resign or be fired was a triable issue of fact on whether a constructive discharge occurred, and not addressing whether repeated threats of termination constitute an adverse employment action), and *Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) (ruling on a teacher's First and Fourteenth Amendment claims brought under 42 U.S.C. § 1983, and not addressing whether shortened preparation periods qualified as adverse employment actions).

scrutiny do not constitute adverse employment actions." *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001). *See also Tyson v. Town of Ramapo*, No. 17 Civ. 4990 (KMK), 2019 WL 1331913, at *14 (S.D.N.Y. Mar. 25, 2019) (finding that threatening termination, without more, did not constitute an adverse action); *Thomas v. Bergdorf Goodman, Inc.*, No. 03 Civ. 3066 (SAS), 2004 WL 2979960, at *10 (S.D.N.Y. Dec. 22, 2004) ("The mere threat of disciplinary action, including the threat of termination, does not constitute an adverse action materially altering the conditions of employment."). Regarding permitting the Student's harassment, the Second Circuit has recognized that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation *prima facie* case." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). However, even assuming the Defendants can be held liable for failing to address a student's harassment of his professor, Karunakaran has failed to indicate that the Student's behavior was retaliatory. *See Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 270 (E.D.N.Y. 2019) (finding no adverse employment action where plaintiff didn't allege she was harassed by co-workers because she engaged in protected activity and that the plaintiff was "attempting to repackage her discrimination claim as a retaliation claim"). Concerning the restriction of Karunakaran's use of an online teaching tool, Karunakaran has not alleged sufficient facts to show that this restriction was "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry*, 336 F.3d at 138 (quotation marks and citations omitted). Examples of actions that rise to the level of an adverse employment action "include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks and citation omitted).

Further, Karunakaran has failed to allege facts that plausibly establish a causal connection between the complaints she made and the adverse employment action.  As Defendants noted in their moving papers, the March Complaint itself references the Department Chair had previously emailed Karunakaran threatening not to reappoint her.  Doc. 2 at 20.  This threat precedes the March Complaint.  Moreover, Karunakaran has not alleged sufficient facts to establish that her informal complaints regarding the Student's behavior preceded the threat.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Therefore, even though denying reappointment can be considered an adverse employment action, Karunakaran has failed to allege participation in a protected activity or any causal connection between what she offers as the protected activities and any adverse employment action.  Karunakaran's federal retaliation claims must be dismissed.

### 3.  Hostile Work Environment Claims

Hostile work environment claims under Title VII and the ADEA require the same elements.  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019).  A hostile work environment claim requires "showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citation omitted).  For the first element, a plaintiff must show that the "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id*. (citations omitted).

In considering whether a plaintiff has met this burden, courts should "examin[e] the totality of the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  Isolated incidents of harassment, unless sufficiently "severe," usually will not suffice to establish a hostile work environment.  *See, e.g., Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

The Second Circuit has prescribed that, "[a]t the pleading stage of the case, . . . plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007).

In the instant case, Karunakaran argues that Defendants' failure to remedy the Student's disruptive and aggressive actions created a hostile work environment and that similarly situated teachers without her protected characteristics were treated differently.  Doc. 51 at 14; Doc. 7 ¶ 43.  The Second Circuit has declined to address whether student-on-teacher harassment can give rise to a hostile work environment claim for which an employer can be liable, *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190 (2d Cir. 2010), but courts in this Circuit have acknowledged that pervasive student-on-teacher harassment could satisfy a hostile work

environment claim.  *See Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 481 (S.D.N.Y. 2017); *Berger-Rothberg v. City of New York*, 803 F. Supp. 2d 155, 164–65 (E.D.N.Y. 2011). These courts followed the standard set by *Peries v. N.Y.C. Bd. of Educ.*, No 97 Civ. 7109 (ARR), 2001 WL 1328921, at *6 (E.D.N.Y. Aug. 6, 2001), which holds that "[the plaintiff] can prevail only if [s]he can show first that a hostile environment existed and second that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action."

In this case, Karunakaran has alleged that the Student became verbally and physically aggressive towards her starting in February 2018, detailing one occasion where the Student told Karunakaran, "You suck. You don't know anything," and another where the Student tried to grab papers and other materials from Karunakaran.  Doc. 7 ¶¶ 36, 39.  Considering the totality of Karunakaran's allegations, the Court finds that these incidents, taken together, do not "meet the threshold of severity or pervasiveness required for a hostile work environment claim."  *Alfano*, 294 F.3d at 376, 380 (vacating award for hostile work environment, because the "humiliating" and "plainly offensive" incidents were "too few, too separate in time, and too mild ... to create an abusive working environment" and because no incident was "of such severity and character as to itself subvert the plaintiff's ability to function in the workplace").

However, even assuming that Karunakaran sufficiently alleged an abusive working environment, beyond conclusory allegations that "other younger and non-Indian professors had their complaints and requests in regard to students' hostile, anti-social behavior answered in a timely manner," Doc. 7 ¶ 43, Karunakaran has not pleaded sufficient facts to support her disparate treatment claims without further details about how she and those other professors are similarly situated in all material respects.  Karunakaran has not satisfactorily alleged facts,

16

beyond statements made upon information and belief, that would show she was subjected to an abusive working environment because of her age, race, or national origin. *See Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (holding that, even at the pleading stage, the complaint must plead facts that "would allow a court to draw a reasonable inference that [the plaintiff] was subjected to any mistreatment or adverse action *because* of her [protected class]"). Karunakaran also suggests that the Student's behavior was motivated by racial animus, Doc. 7 ¶ 35, but has not pleaded sufficient detail to support any inference of discriminatory intent. Karunakaran asserts that because the Student did not misbehave in an online class that Karunakaran taught, the Student's in-person behaviors must be triggered by racial animus, but provides no details to support that allegation beyond statements made upon information and belief. *Id*.

Therefore, Karunakaran's federal hostile work environment claims must be dismissed.

## C.    SHRL and CHRL Claims

A district court may decline to exercise supplemental jurisdiction over state and city law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[W]hen the federal claims are dismissed the 'state claims should be dismissed as well.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).  Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise jurisdiction. *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  The Supreme Court has noted that in a case where all federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. (quoting *Cohill*, 484

U.S. at 350 n.7).  Having dismissed all of Karunakaran's federal claims under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over, and dismisses, her state and city law claims.

## IV.    LEAVE TO AMEND

The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 Fed. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted)). Here, while Karunakaran has already amended her complaint once, it was not in the context of a motion to dismiss, and the court has, therefore, not provided guidance as to how her claims may be adequately made.  The Second Circuit has reaffirmed that the "liberal spirit" of the Federal Rules entails a "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)).  Courts should not dismiss claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id*.  Therefore, while Karunakaran has not requested leave to amend, this Court grants Karunakaran leave to replead her claims if she so chooses.

**V.     CONCLUSION**

For the reasons set forth above, the Defendants' motion to dismiss is GRANTED.

If the plaintiff wishes to do so, she may file a Second Amended Complaint by **<u>March 12,</u>**

**<u>2021</u>**.  If she fails to do so, the case will be closed.  The Clerk of Court is respectfully directed to

terminate the motion, Doc. 45.

It is SO ORDERED.

Dated:    February 12, 2021
          New York, New York

_____
                    Edgardo Ramos, U.S.D.J.