UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

CHITRA KARUNAKARAN,

              Plaintiff,

          v.                                                            **OPINION AND ORDER**

BOROUGH OF MANHATTAN COMMUNITY                 18 Civ. 10723 (ER)
COLLEGE, CITY UNIVERSITY OF NEW YORK,
ANTONIO PEREZ, KARIN WILKS, SANGEETA
BISHOP, RIFAT SALAM, ANTIONETTE
MCKAIN, ROBERT DIAZ, IAN WENTWORTH,
MICHAEL HUTMAKER, and MARVA CRAIG

              Defendants.
───────────────────────────────

Ramos, D.J.:

      Chitra Karunakaran, who was a Professor at the Borough of Manhattan Community College ("BMCC"), which is part of the City University of New York ("CUNY"), brings this action against CUNY, BMCC, and several current and former employees of BMCC[1] (collectively, the "Defendants"), for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *See* Doc. 62. In particular, Karunakaran alleges that Defendants discriminated against her on the basis of her race, national origin, and age, and retaliated against her. *See id.*

      Karunakaran, proceeding *pro se*, first filed her complaint on November 15, 2018. *See* Doc. 2. On September 6, 2019, after retaining counsel, Karunakaran filed an amended complaint

───────────────────────
[1] Antonio Perez, Karin Wilks, Sangeeta Bishop, Rifat Salam, Antoinette McKain, Robert Diaz, Ian Wentworth, Michael Hutmaker, and Marva Craig.

("First Amended Complaint" or "FAC").  *See* Doc. 7.  Defendants moved to dismiss the FAC on May 7, 2020.  *See* Doc. 45.  On February 12, 2021, the Court granted Defendants' motion, dismissing Karunakaran's federal claims without prejudice to replead, and declining to exercise supplemental jurisdiction over Karunakaran's NYSHRL and NYCHRL claims.  *See* Doc. 55.  On March 26 and 27, 2021, Karunakaran's counsel filed letter motions seeking to withdraw.  See Docs. 57-58.  The Court granted counsel's requests to withdraw.  *See* Doc. 59.

On April 30, 2021, Karunakaran, again proceeding *pro se*, filed a second amended complaint ("SAC").  *See* Doc. 62.  Defendants now move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the motion is GRANTED.

## I.     BACKGROUND

Karunakaran, a 75-year-old Indian woman, was employed by CUNY at BMCC for approximately 20 years as a professor of psychology and sociology.  Doc. 62 ¶¶ 13, 37.  Karunakaran alleges that on February 27, 2018, a student (the "Student") in her class became verbally and physically aggressive towards her and disrupted class.  *Id.* ¶ 41.  Specifically, Karunakaran alleges that the Student told her, "You suck.  You don't know anything."  *Id.* ¶ 42.  According to Karunakaran, the Student repeated these comments on two other occasions.  *Id.*  Karunakaran argues that the Student's behavior was racially motivated because, when she had previously taught the Student in online classes, the Student had not been disruptive.  *Id.*  Karunakaran also argues that the Student relied on "prevailing racialized stereotypes . . . about Asians" and assumed Karunakaran would remain silent "in the face of her mocking verbal abuse" and would not confront her or call security.  *Id.* at 23.

Karunakaran alleges she complained to Defendants about the Student's behavior, and, in particular, that in emails to Defendants, she offered to speak with the Student, suggested that the

Student take her class online, and requested that BMCC's Office of Student Affairs remove the Student from her class. *Id.* ¶¶ 42, 43. According to Karunakaran, Defendants did not respond to her emails and did not otherwise intervene to address the Student's behavior. *Id.* Specifically, Karunakaran alleges Defendant Ian Wentworth, who at the time worked in the Office of Student Affairs, took no action in response to the Student's behavior and in so doing allowed the behavior to re-occur. *Id.* ¶ 43.

On March 18, 2018, Karunakaran filed a complaint, titled "A Hostile Work Environment," with Defendant Antonio Perez, who was at the time President of BMCC. *Id.* ¶¶ 18, 49; Doc. 2 at 19. In her complaint, Karunakaran alleged that BMCC maintained a "covert, ad hoc/post hoc mode of organizational dysfunction resulting in a generally unchallenged racialized, ageist hostile work environment for contingent academic labor." Doc. 2 at 19.

Karunakaran alleges that on March 27, 2018, the Student, after learning she had failed the midterm, tried to grab papers and other materials from her and ran from her office. Doc. 62 ¶ 45. Karunakaran alleges she continued to complain to Defendants about the Student's conduct but, as before, they took no action. *Id.* ¶ 46. Karunakaran argues that Defendants, in "completely disregarding their job responsibilities . . . and at no point attempting to remedy the ongoing and dangerous situation caused by [the] Student," discriminated against her on the basis of her race, national origin, and age. *Id.* ¶ 47.

Karunakaran also alleges that she participated in various whistleblowing and union activities throughout her tenure, *id.* ¶¶ 40, 52, and lists a number of examples of these activities. *Id.* at 50. Specifically, Karunakaran alleges that she emailed Perez to encourage him to program every department printer to print double-sided; she asked Perez why online classes could not be taught through "Peer faculty mentoring;" she asked Defendant Sangeeta Bishop whether she

3

could serve on an equity and inclusion task force but was told that adjunct professors were not included; she asked whether faculty needed to include attendance information in their syllabi; she complained about Defendants' failure to manage the Student's conduct; and she asked why hard copies of mail had not been delivered to BMCC's uptown campus. *Id.* at 50-51.

On May 11, 2018, Karunakaran was denied reappointment for the Fall 2018 semester. *Id.* ¶¶ 39, 51. Karunakaran argues this denial resulted from discrimination and retaliation on the basis of her race, national origin, and age. *Id.* ¶ 40. Karunakaran alleges that she was replaced by a younger professor with "less age-defined seniority . . . [and] possibly without a doctorate . . . ." *Id.* at 39-40.

On August 13, 2018, Karunakaran filed a charge of discrimination with the New York State Division of Human Rights. *Id.* ¶ 3. The charge was subsequently sent to the Equal Employment Opportunity Commission ("EEOC"), and on August 21, 2018, the EEOC issued a Right to Sue letter. *Id.* ¶ 4.

As stated above, Karunakaran filed a *pro se* complaint in this Court on November 15, 2018. Doc. 2. With the assistance of counsel, she filed an FAC on September 6, 2019. Doc. 7. Defendants moved to dismiss the FAC on May 7, 2020, and the Court granted Defendants' motion on February 12, 2021, dismissing Karunakaran's federal claims without prejudice to replead, and declining to exercise supplemental jurisdiction over Karunakaran's NYSHRL and NYCHRL claims. *See* Docs. 45, 55. On April 30, 2021, Karunakaran—again proceeding *pro se*—filed the instant complaint., alleging substantially the same facts she alleged in her FAC.

## II.   LEGAL STANDARD

4

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

"Because [Karunakaran] is a *pro se* litigant, we read h[er] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Lastly, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker*, 717 F.3d at 122 n.1.

III.    **DISCUSSION**

### a. Title VII and ADEA Claims

#### i. Discrimination

Karunakaran alleges that Defendants discriminated against her when they failed to address the Student's behavior and when they denied her reappointment. Doc. 62 ¶¶ 47, 55. Karunakaran also alleges Defendants treated her less favorably than similarly situated co-workers. *Id.* ¶ 55.

Discrimination claims under Title VII or the ADEA are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). Under the *McDonnell* framework, a plaintiff first must establish a *prima facie* case of discrimination. *McDonnell*, 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* at 802-03. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 804. Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of . . . litigation." *Id.* at 311. Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a *prima facie* case.

To establish a *prima facie* case of discrimination under either Title VII or the ADEA, a plaintiff must show that (1) she belonged to a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the adverse employment action

occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d. Cir. 2003). Although a plaintiff is not required to plead facts proving each element of a *prima facie* case of discrimination at the pleading stage, her allegations must provide "plausible support" for a "minimal inference" that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Further, those allegations must be fact-specific. *See Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011). Conclusory or naked allegations will not do. *See id*.

Here, as was the case in her first amended complaint, Karunakaran fails to plead allegations that support a minimal inference of discriminatory motivation. As Defendants point out, Karunakaran's SAC "suffers from the same flaws" as her FAC. *See* Doc. 69 at 10. Again, beyond conclusory statements that she was denied reappointment as a result of discrimination, Karunakaran does not allege any specific facts showing that the denial was related to discrimination on the basis of her race, national origin, or age. *See, e.g.*, *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 32-33 (2d Cir. 2016) ("plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond he realm of the 'conceivable' to the 'plausible'").

Beyond this, Karunakaran again does not provide any information about similarly situated employees. When a plaintiff seeks to meet her *prima facie* case by reference to the disparate treatment of an allegedly similarly situated employee, "the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). A plaintiff need not show that a comparator was an "*identically* situated employee," just that she was "similarly situated in all *material* respects." *Id.* at 53-4 (quoting *Shumway v. United Parcel*

7

*Service*, 118 F.3d 60, 64 (2d Cir. 1997)) (emphasis in original).  Further, such employee "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d. 419, 426 (S.D.N.Y. Sept. 15, 2010) (quoting *McGuinness*, 263 F. 3d at 54) (internal quotation marks omitted).  Employment characteristics which can support a finding that two employees are "similarly situated" include "similarities in education, seniority, performance, and specific work duties," *DeJesus v. Starr Technical Risks Agency, Inc.*, 03 Civ. 1298 (RJH), 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004), and similar requirements for skill, effort, and responsibility for jobs performed "under similar working conditions." *DeJohn v. Wal-Mart Stores E., LP*, 09 Civ. 01315 (GTS), 2013 WL 1180863, at *6 (N.D.N.Y. Mar. 20, 2013).

In the Court's order granting Defendants' first motion to dismiss, the Court noted that Karunakaran's general allegations that she was treated less favorably than certain similarly situated employees were insufficient "without . . . additional details about specific events and without . . . additional facts that [she] was similarly situated in all material respects to those comparator employees." Doc. 55 at 9-10.  While given another opportunity to do so, Karunakaran again does not provide these specifics.  Karunakaran merely re-alleges, upon information and belief, that she was replaced by a younger professor.  She does not identify or otherwise describe this professor, nor does she provide any facts alleging that she and this professor were similarly situated in any material respect or that she was treated less well than this professor.

In addition, in a purported attempt to remedy the deficiencies in her FAC, Karunakaran explains that *all* her former co-workers are her comparators:  "All faculty regardless of appointment, are comparators." Doc. 62 at 17.  But, again, she does not explain how she was

similarly situated to all faculty members. That they teach the same students, as Karunakaran alleges, is not enough. *See id.* Nor does she offer specific examples of disparate treatment with respect to these co-workers. While Karunakaran generally alleges that her similarly-situated co-workers were not terminated, *id.* ¶ 55, she does not provide any further details.

Karunakaran also alleges that another professor in the psychology department at times let her students leave after only one hour of class, even though the class was meant to run for two and a half hours. Doc. 62 at 59-60. Karunakaran does not identify or describe this alleged comparator, nor does she explain how this professor's choice to let her students leave class early in any way supports an inference of discrimination against her; notably, Karunakaran does not allege that she would not have been allowed to make the same choice. At bottom, none of these allegations can support even a minimal inference that Karunakaran experienced a difference in treatment attributable to discrimination. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing discrimination claims where complaint fails to identify, let alone describe, any purported comparator).

As to her claim that Defendants discriminated against her by failing to address the Student's behavior, Karunakaran does not show how this failure is in any way connected to her race, national origin, or age.

Because, as Defendants argue, Karunakaran does not submit any allegations to support an inference that Defendants' failure to address the Student's behavior and denial of her reappointment were at all motivated by her race, national origin, or age, her federal discrimination claims are dismissed.

  **ii. Retaliation Claims**

Karunakaran alleges Defendants retaliated against her for her participation in a protected activity. Doc. 62 at 14. Specifically, she alleges Defendants denied her reappointment because of her "persistent participation in lawful union activity" and because of her "whistleblower queries." *Id.* ¶ 40.

Like her discrimination claims, Karunakaran's retaliation claims also are analyzed under the *McDonnell* framework.[2] Under that framework, a plaintiff first must establish a *prima facie* case of retaliation. *McDonnell*, 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nonretaliatory reason for its actions. *Id*. at 802–03; *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *McDonnell*, 411 U.S. at 804; *Kirkland*, 760 F.3d at 225.

To state a *prima facie* case of retaliation under § 1981, a plaintiff must establish (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017).

Here, Karunakaran cannot plausibly allege a protected activity. "A protected activity is one that 'protest[s] or oppose[s] statutorily prohibited discrimination.'" *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 400 (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566);

---

[2] Title VII and the ADEA contain nearly identical provisions forbidding retaliation. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Retaliation claims under Title VII and the ADEA therefore are analyzed under the same framework. Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), aff'd, 689 F. App'x 670 (2d Cir. 2017); see also Terry, 336 F.3d at 141 (applying the same standards and burdens to claims of retaliation brought under both Title VII and the ADEA).

*Brands-Kousaros v. Banco Di Napoli S.P.A.*, No. 97 Civ. 1673 (DLC), 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997) ("the protected activity alleged must involve some sort of complaint about a type of discrimination that [a statute] forbids."). While a protected activity generally involves the filing of a formal complaint of discrimination with an administrative agency, *see Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992), "both formal and informal complaints [are] protected activity . . . ." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (citing *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680–81 (2d Cir. 2009)).

Protected complaints generally include "making complaints to management . . . , protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Soliman v. Deutsche Bank AG*, No. 03 Civ. 104 (CBM), 2004 WL 1124689, at *12 (S.D.N.Y. May 20, 2004) (citing *Cruz*, 202 F.3d at 566); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). An informal complaint may be "nothing more than a simple 'objection voiced to the employer,' . . . but at the very least, 'there must be some form of professional indicia of a complaint made against an unlawful activity.'" *Soliman*, 2004 WL 1124689, at *12 (internal citations omitted).

Though Karunakaran repeatedly refers to "union activities" and "whistleblowing" she does not, as Defendants point out, provide any allegations that her union activities or whistleblowing concerned or were related to some statutorily-prohibited discrimination. In particular, Karunakaran alleges that she emailed Perez to encourage him to program every department printer to print double-sided; she asked Perez why online classes could not be taught through "Peer faculty mentoring;" she asked Defendant Sangeeta Bishop whether she could serve on an equity and inclusion task force but was told that adjunct professors were not

11

included; she asked whether faculty needed to include attendance information in their syllabi; and she asked why hard copies of mail had not been delivered to BMCC's uptown campus.³ Doc. 62 at 50-51. None of these suggestions or questions is a complaint, protest, or objection and, in any event, Karunakaran does not show how any of these activities relates to an unlawful activity, let alone statutorily-prohibited discrimination. As Karunakaran cannot allege a protected activity, her federal retaliation claim is dismissed.

### b. NYSHRL and NYCHRL Claims

A district court may decline to exercise supplemental jurisdiction over state and city law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[W]hen the federal claims are dismissed the 'state claims should be dismissed as well.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise jurisdiction. *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Supreme Court has noted that in a case where all federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Cohill*, 484 18 U.S. at 350 n.7). Having dismissed all of Karunakaran's federal claims under Rule 12(b)(6),

---

³ Karunakaran also repeats her allegation—in her FAC—that she engaged in protected activity when she complained to Defendants about the Student's behavior, but the Court in its order granting Defendants' first motion to dismiss found none of those complaints—her informal complaints to Defendants as well as her formal March 18 complaint—amounted to protected activities because they did not concern unlawful activity. *See* Doc. 55 at 11.

the Court declines to exercise supplemental jurisdiction over, and dismisses, her state and city law claims.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss the SAC is GRANTED with prejudice.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 68, and close the case.

It is SO ORDERED.

Dated:   March 28, 2022
         New York, New York

_____
Edgardo Ramos, U.S.D.J.